**UNITED STATES DISTRICT COURT**         **EASTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| DONALD HESSELTINE, CHARLES DWAYNE PARRISH, DAVID DAY, DENNIS MAY, WILLIAM WILKINS, JIMMY CARTER, DONALD WADE, BRUCE HAMILTON, CHESTER TRUSTY, CHARLES LEATHERWOOD, MICHAEL PAUL FREDERICK, LUIS GURRERO, RODNEY GOFF, JOSEPH CHARLES, BENJAMIN BURNES, RICKY BROWN, THOMAS CHAPMAN, STEPHEN WITHERS, STEPHEN MORSE, CLYDE WELLS, TROY SELMAN, ISAAC JEFFERSON, MACLYN OWENS, CHARLES HANNA, AUSTIN POOL, LARRY FITTS, HENRY COPELAND, TOM VAN JONES, BILLY ALLEN, RICHARD ANDREPONT, GEORGE DEWBERRY, | § § § § § § § § § § § § § § § § § § § | |
| Plaintiffs, | § § § | |
| *versus* | § § | CIVIL ACTION NO. 1:03-CV-865 |
| THE GOODYEAR TIRE & RUBBER COMPANY, | § § § § | |
| Defendant. | § | |

### MEMORANDUM AND ORDER

Pending before the court is Defendant The Goodyear Tire & Rubber Company's ("Goodyear") Motion for Summary Judgment (#97).  Goodyear seeks summary judgment on Plaintiffs Donald Hesseltine ("Hesseltine"), Charles Dwayne Parrish ("Parrish"), and David Day's ("Day") (collectively "Plaintiffs") claims alleging unpaid overtime compensation in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 206, 207, 216(b) (2000).

Having reviewed the pending motion, the submissions of the parties, the pleadings, and the applicable law, the court is of the opinion that summary judgment is warranted.

I.   Background

Goodyear owns and operates a chemical plant located in Beaumont, Texas.  Plaintiffs are all current or former employees of the facility.  Hesseltine held a variety of positions during his thirty-nine-year tenure at the plant and was a senior operator before he retired on February 1, 2003.  Day also performed a number of jobs during his thirty-one-year term of employment at the facility, and immediately prior to his retirement in February 2003, he was a senior operator. Parrish has worked at the plant for approximately twenty-six years in several different capacities and currently is employed as a process operator.

Goodyear utilizes four, twelve-hour shifts (A, B, C, and D) to run its production units at the plant.  The shift schedules for Goodyear's four, twelve-hour rotations are set and distributed before the calendar year begins.  After receiving their schedule for the entire year, employees know which days and nights they will work, which shifts they will relieve, and which shifts will relieve them.  The schedule operates on a twenty-eight day cycle, and employees on the twelve-hour shift rotation have as many days off as days worked.  Twelve-hour shift employees work alternating thirty-six hour and forty-eight hour weeks.  Additionally, employees may be called in to relieve absent members on other shifts.

Goodyear's twelve-hour shift employees are required to make person-to-person shift relief at their respective work stations.  According to Goodyear's pay policy, person-to-person shift relief for its twelve-hour associates is mandatory.  The policy states, "Shift relief will be made within a half hour window prior to regular start time (e.g. between 4:30 and 5:00).  This will

assure continuity at shift change, facilitate scheduling of meetings and assure associates are paid in line with hours worked." Hill Mayfield ("Mayfield"), Goodyear's former, lead, human resource manager at the facility, testified that the purpose of person-to-person shift relief is to provide an employee beginning his shift with information concerning the activities of the previous shift, to ensure the safe operation of the plant, and to guarantee that each unit at the plant operates around the clock. Despite Goodyear's scheduled shift start time, many of the twelve-hour associates make private arrangements to relieve each other early. Under these agreements, each employee works a twelve-hour shift but is relieved earlier than Goodyear's scheduled time. Notwithstanding the employee-instituted early or late shift-relief arrangement, if an employee's relief does not make shift relief on time, the employee on duty must remain at his station until relief arrives or he is relieved by management.

Goodyear's twelve-hour shift employees do not punch a time clock. Rather, they are on an honor system to report to work on time and to self-report variations in their hours worked to each unit's Administrative Star Point. Goodyear utilizes the Administrative Star Point System to record exceptions to employees' regular twelve-hour shifts. A coach, or front-line supervisor, verifies the hours each employee works. Goodyear pays twelve-hour shift associates straight time for the first eight hours of work and overtime for the next four hours worked. Overtime is paid at 1.5 times the regular rate for hours worked in excess of eight per day, 1.71 times the regular rate for hours worked in excess of twelve per day, 2.5 times the regular rate for holidays worked, and 2.28 times the regular rate for the seventh day worked in any workweek. Associates are also paid for meal periods and rest breaks taken throughout the workday.

In this action, Plaintiffs claim entitlement to additional overtime compensation under the FLSA.  They assert that Goodyear's policy requiring person-to-person shift relief results in an overlap between two shifts, causing employees to work beyond their twelve-hour shifts without overtime compensation.  Further, Plaintiffs allege that they were "regularly required to work off the clock after their shifts were completed if the next shift or the relief employee did not arrive on time, was in a meeting or was reassigned to a different shift or department without notice to the applicable shift supervisor."  Plaintiffs seek damages for unpaid back wages and benefits, liquidated damages equal in amount to unpaid compensation, court costs, attorneys' fees, and pre-judgment and post-judgment interest.

On September 16, 2003, Hesseltine and Lloyd Martin ("Martin") filed their original complaint in this court as a putative collective action, alleging that they "did not properly receive overtime compensation or benefits for all hours worked in excess of 40 hours per week" and seeking "to recover unpaid overtime wages brought under the [FLSA]."  Martin dismissed his claims voluntarily and withdrew from the case on May 18, 2004.  On August 17, 2004, the court conditionally certified this case as a collective action and permitted the issuance of notice to other potential plaintiffs.  When the opt-in period closed, thirty-six individuals had joined the collective action.  On April 27, 2005, Plaintiffs voluntarily dismissed several opt-in claimants because their claims were barred by the statute of limitations.  The next day, Plaintiffs filed their second amended complaint, which effectively converted their lawsuit from a collective action into a number of individual claims.  On June 8, 2005, Goodyear filed the instant motion seeking summary judgment on the claims asserted by Hesseltine, Day, and Parrish, deferring resolution of the claims of the remaining twenty-eight plaintiffs to a later date.

II.    <u>Analysis</u>

A.    <u>Summary Judgment</u>

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005); *Martinez v. Schlumberger, Ltd.*, 338 F.3d 407, 411 (5th Cir. 2003); *Terrebonne Parish Sch. Bd. v. Mobil Oil Corp.*, 310 F.3d 870, 877 (5th Cir. 2002).  Where a defendant moves for summary judgment on the basis of an affirmative defense and, thus, bears the ultimate burden of persuasion, "it must adduce evidence to support each element of its defenses and demonstrate the lack of any genuine issue of material fact with regard thereto." *Rushing v. Kansas City S. Ry. Co.*, 185 F.3d 496, 505 (5th Cir. 1999), *cert. denied*, 528 U.S. 1160 (2000) (citing *Exxon Corp. v. Oxxford Clothes, Inc.*, 109 F.3d 1070, 1074 (5th Cir.), *cert. denied*, 522 U.S. 915 (1997)); *see Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).  To warrant judgment in its favor, the movant "'"must establish beyond peradventure *all* of the essential elements of the defense."'" *Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir.

5

2003) (emphasis in original) (quoting *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002) (quoting *Fontenot*, 780 F.2d at 1194)).

"A fact is '*material*' if it '*might affect* the outcome of the suit under governing law.'" *Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001) (emphasis in original) (quoting *Anderson*, 477 U.S. at 248); *see Harken Exploration Co. v. Sphere Drake Ins. PLC*, 261 F.3d 466, 471 (5th Cir. 2001); *Merritt-Campbell, Inc. v. RxP Prods., Inc.*, 164 F.3d 957, 961 (5th Cir. 1999); *Burgos v. Southwestern Bell Tel. Co.*, 20 F.3d 633, 635 (5th Cir. 1994). "An issue is '*genuine*' if it is real and substantial, as opposed to merely formal, pretended, or a sham." *Bazan*, 246 F.3d at 489 (emphasis in original). Thus, a genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *accord Harken Exploration Co.*, 261 F.3d at 471; *Merritt-Campbell, Inc.*, 164 F.3d at 961. The moving party, however, need not negate the elements of the nonmovants' case. *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005); *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).

Once a proper motion has been made, the nonmoving party may not rest upon mere allegations or denials in the pleadings but must present affirmative evidence, setting forth specific facts, to show the existence of a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 322-23; *Anderson*, 477 U.S. at 257; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986); *Smith ex rel. Estate of Smith v. United States*, 391 F.3d 621, 625 (5th Cir. 2004); *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003) (citing *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 349 (5th Cir. 2001)); *Rushing*, 185 F.3d at 505. "[T]he court must

6

review the record 'taken as a whole.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (quoting *Matsushita Elec. Indus. Co.*, 475 U.S. at 587).   All the evidence must be construed "in the light most favorable to the non-moving party without weighing the evidence, assessing its probative value, or resolving any factual disputes." *Williams v. Time Warner Operation, Inc.*, 98 F.3d 179, 181 (5th Cir. 1996); *see Reeves*, 530 U.S. at 150; *Malacara*, 353 F.3d at 398; *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003); *Harken Exploration Co.*, 261 F.3d at 471; *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir.), *cert. denied*, 534 U.S. 951 (2001).   The evidence of the nonmovants is to be believed, with all justifiable inferences drawn and all reasonable doubts resolved in their favor.   *See Palmer v. BRG of Ga., Inc.*, 498 U.S. 46, 49 n.5 (1990) (citing *Anderson*, 477 U.S. at 255); *Lincoln Gen. Ins. Co.*, 401 F.3d at 349; *Martin*, 353 F.3d at 412; *Martinez*, 338 F.3d at 411; *Gowesky v. Singing River Hosp. Sys.*, 321 F.3d 503, 507 (5th Cir.), *cert. denied*, 540 U.S. 815 (2003); *Chaplin*, 307 F.3d at 372.

Nevertheless, "'only *reasonable* inferences can be drawn from the evidence in favor of the nonmoving party.'" *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 469 n.14 (1992) (emphasis in original) (quoting *H.L. Hayden Co. of N.Y., Inc. v. Siemens Med. Sys., Inc.*, 879 F.2d 1005, 1012 (2d Cir. 1989)).   "If the [nonmoving party's] theory is . . . senseless, no reasonable jury could find in its favor, and summary judgment should be granted." *Id.* at 468-69. The nonmovants' burden is not satisfied by "some metaphysical doubt as to material facts," conclusory allegations, unsubstantiated assertions, speculation, the mere existence of some alleged factual dispute, or "only a scintilla of evidence." *Little*, 37 F.3d at 1075; *see Anderson*, 477 U.S. at 247-48; *Boudreaux*, 402 F.3d at 540; *Wallace*, 80 F.3d at 1047; *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (citing *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th

7

Cir.), *cert. denied*, 513 U.S. 871 (1994)).  "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown*, 337 F.3d at 541; *see Bridgmon v. Array Sys. Corp.*, 325 F.3d 572, 577 (5th Cir. 2003); *Hugh Symons Group, plc v. Motorola, Inc.*, 292 F.3d 466, 468 (5th Cir.), *cert. denied*, 537 U.S. 950 (2002).

Summary judgment is mandated if the nonmovants fail to make a showing sufficient to establish the existence of an element essential to their case on which they bear the burden of proof at trial. *See Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp.*, 477 U.S. at 322; *Wenner v. Texas Lottery Comm'n*, 123 F.3d 321, 324 (5th Cir. 1997), *cert. denied*, 523 U.S. 1073 (1998).  "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 322-23.

B.    Abandonment of Claims

Plaintiffs' motion for notice to potential class members alleges that "Plaintiffs were not . . . compensated for the time they spent walking from the gate to their workstation, . . . or the time they spent showering and washing the chemical residue from their bodies and clothes . . . ."  Each plaintiff submitted a declaration in support of the notice; however, only Hesseltine and Parrish testified that they are seeking compensation for these activities.  At deposition, Parrish explained that he thinks he is owed overtime pay for time he spends "walking [to] put on [his] lunch kit, go take [his] tool belt off and . . . walk out the gate."  Goodyear construed the notice and testimony to indicate that Plaintiffs are pursuing claims for overtime compensation in connection with these activities.

8

In their response to Goodyear's motion for summary judgment, Plaintiffs specifically state that they are not seeking compensation for any overtime pay in connection with time spent walking to and from the gate to their workstations, time spent putting on or taking off tool belts or hard hats, or time spent showering. Furthermore, Plaintiffs filed a motion to strike Goodyear's summary judgment motion as it relates to the claims surrounding these activities, contending that "the preliminary and postliminary claims Goodyear has challenged, are not actual claims which [Plaintiffs] have [ ] asserted." Accordingly, any potential claim relating to time spent donning or doffing equipment, walking to or from a workstation, or showering has been abandoned and is not presently at issue. *See Bursztajn v. United States*, 367 F.3d 485, 491 (5th Cir. 2004); *Scales v. Slater*, 181 F.3d 703, 709 n.5 (5th Cir. 1999); *Yohey v. Collins*, 985 F.2d 222, 224-25 (5th Cir. 1993); *Friou v. Phillips Petroleum Co.*, 948 F.2d 972, 974 (5th Cir. 1991); *see also Davis v. Cannon*, 91 Fed. Appx. 327, 329 (5th Cir. 2004).

C.   FLSA Claims

Essentially, Plaintiffs have two types of claims under the FLSA. Plaintiffs allege that "[a]s a result of the [person-to-person] shift relief, the[y] were often required to work ten to fifteen minutes or more, in excess of their scheduled twelve-hour shift" without overtime compensation. Additionally, Hesseltine, but not Day or Parrish, complains that when his shift relief did not show up at an agreed early time or was in a safety meeting, he was required to work uncompensated overtime.

"The FLSA was passed by Congress in 1938 in an attempt to eliminate low wages and long hours and to correct conditions that were detrimental to the health and well-being of workers." *Rodriguez v. Township of Holiday Lakes*, 866 F. Supp. 1012, 1017 (S.D. Tex. 1994); *see*

9

*Rutherford Food Corp. v. McComb*, 331 U.S. 722, 727 (1947); *Cash v. Conn Appliances, Inc.*, 2 F. Supp. 2d 884, 889 (E.D. Tex. 1997).  The Act created minimum protections for individual workers to ensure that each employee would receive "'[a] fair day's pay for a fair day's work' and would be protected from 'the evil of "overwork" as well as "underpay."'"  *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981) (quoting *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 578 (1942)).  Accordingly, the FLSA established a minimum wage, regulations governing maximum hours, recordkeeping and reporting requirements, provisions regulating child labor, and civil and criminal penalties for violation of any of its provisions.  *See Castillo v. Case Farms of Ohio, Inc.*, 96 F. Supp. 2d 578, 636-37 (W.D. Tex. 1999) (citing 29 U.S.C. § 201 *et seq.*).  Minimum wage and overtime requirements are the two central themes of the Act.  *See Cash*, 2 F. Supp. 2d at 889-90.  "'Section [6] . . . of the FLSA mandates [an] . . . hourly minimum wage due to all employees [,while] . . . .  Section [7] delineates maximum work hour limitations.'"  *Id*. at 890 (quoting *Monacan v. County of Chesterfield*, 95 F.3d 1263, 1267 (4th Cir. 1996)).

"The FLSA requires any employee working over 40 hours in a week to be paid overtime, premium compensation at the rate of one and one-half times their 'regular rate' of pay."  *York v. City of Wichita Falls*, 48 F.3d 919, 921 (5th Cir. 1995) (citing 29 U.S.C. § 207(a)(1)); *see also Singer v. City of Waco*, 324 F.3d 813, 818 (5th Cir. 2003), *cert. denied*, 540 U.S. 1177 (2004).  "Thus, an employer who knows or should know that an employee is or was working overtime must comply with the provisions of 29 U.S.C. § 207(a)."  *Harvill v. Westward Communications, LLC*, 311 F. Supp. 2d 573, 583 (E.D. Tex. 2004) (citing *Newton v. City of Henderson*, 47 F.3d 746, 748 (5th Cir. 1995)).  An employee who brings suit for unpaid overtime compensation under

the FLSA bears the burden of proving, with definite and certain evidence, that he performed work for which he was not compensated properly.  *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-87 (1946); *see also Reeves v. International Tel. & Tel. Corp.*, 616 F.2d 1342, 1351 (5th Cir. 1980), *cert. denied*, 449 U.S. 1077 (1981); *Harvill*, 311 F. Supp. 2d at 583; *Karr v. City of Beaumont*, 950 F. Supp. 1317, 1321 (E.D. Tex. 1997); *Duplessis v. Delta Gas, Inc.*, 640 F. Supp. 891, 895 (E.D. La. 1986).  When the employer is in possession of the pertinent employment records, "the employee may easily discharge his burden by securing the production of those records." *Mt. Clemens Pottery Co.*, 328 U.S. at 687.  If the employer's records are inaccurate or inadequate, however, the employee can meet his burden by proving that he, in fact, performed work for which he was improperly compensated and produce sufficient evidence to show the amount and extent of the work "as a matter of just and reasonable inference." *Id.*; *Duplessis*, 640 F. Supp. at 896.

In order to clarify an employer's duty to pay employees overtime, Congress passed the Portal-to-Portal Act, which provides employers with protection from overtime obligations relating to incidental work activities.  *See Dunlop v. City Elec., Inc.*, 527 F.2d 394, 397 (5th Cir. 1976); *Karr*, 950 F. Supp. at 1322.  The Portal-to-Portal Act provides:

> [N]o employer shall be subject to any liability or punishment under the [FLSA] . . . on account of the failure of such employer to pay an employee minimum wages, or . . . overtime compensation, for or on account of . . . activities which are preliminary to or postliminary to [the principal activity or activities which such employee is employed to perform], which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time . . . at which he ceases, such principal activity or activities.

29 U.S.C. § 254(a)(2) (2000); *see Karr*, 950 F. Supp. at 1322.  The legislative history and administrative interpretations of the Portal-to-Portal Act indicate that the phrase "'activity or

11

activities' was used to dispel the notion that any activities not inextricably tied to a single predominant principal activity could be considered noncompensable." *Dunlop*, 527 F.2d at 397-98. For purposes of the Portal-to-Portal Act, an employee may be engaged in many "principal activities[,]" which include "any work of consequence performed for an employer, no matter when the work is performed." *Id.*; *see also Karr*, 950 F. Supp. at 1322.

An activity is considered "principal" if it is "an integral and indispensable part of the principal activities for which [the employee is] employed" and is not specifically excluded by the Portal-to-Portal Act. *Steiner v. Mitchell*, 350 U.S. 247, 256 (1956); *see Bienkowski v. Northeastern Univ.*, 285 F.3d 138, 140-41 (1st Cir. 2002); *Anderson v. Pilgrim's Pride Corp.*, 147 F. Supp. 2d 556, 562-63 (E.D. Tex. 2001), *aff'd*, 44 Fed. Appx. 652, 652 (5th Cir. 2002); *Karr*, 950 F. Supp. at 1322. The United States Court of Appeals for the Fifth Circuit has held that the test to determine which activities are "integral and indispensable," and, thus, "principal," is "whether [the activities] are performed as part of the regular work of the employees in the ordinary course of business." *Dunlop*, 527 F.2d at 400-01; *see Vega v. Gasper*, 36 F.3d 417, 424 (5th Cir. 1994); *Karr*, 950 F. Supp. at 1322. "[W]hat is important is that such work is necessary to the business and is performed by the employees, primarily for the benefit of the employer, in the ordinary course of that business." *Dunlop*, 527 F.2d at 401; *see also Bernard v. IBP, Inc. of Neb.*, 154 F.3d 259, 264-65 (5th Cir. 1998); *Vega*, 36 F.3d at 424; *Boudreaux v. Banctec, Inc.*, 366 F. Supp. 2d 425, 431 (E.D. La. 2005); *Karr*, 950 F. Supp. at 1322. "The only activities excluded from FLSA coverage [under the Portal-to-Portal Act] are those undertaken 'for [the employees'] own convenience, not being required by the employer and not being necessary for the performance of their duties for the employer.'" *Barrentine v. Arkansas-Best Freight Sys., Inc.*,

750 F.2d 47, 50 (8th Cir. 1984), *cert. denied*, 471 U.S. 1054 (1985); *see Dunlop*, 527 F.2d at 398.

    1.   <u>Person-to-Person Shift Relief</u>

Plaintiffs argue that person-to-person shift relief is "an integral part of Plaintiffs' required duties and . . . the performance of shift relief [is] one of Plaintiffs' principal activities" and, therefore, is compensable under the FLSA.  Plaintiffs maintain that because Goodyear's person-to-person relief policy required them to make shift relief within a half hour of the start of their scheduled shifts, they were required to work an average of ten to fifteen minutes in excess of their regularly scheduled twelve-hour shifts.

Hesseltine worked on shift D as a senior board operator in the Budene unit.  At deposition, he testified that ordinarily it took him approximately ten minutes to perform shift relief:

> Q:    Okay.  You say:  "Goodyear's policy deprived me and our coworkers of our hard earned pay and resulted in the loss of approximately 30 minutes to an hour of wages each week."
>
> Do you see that?
>
> A:    Yes, ma'am.
>
> * * * *
>
> Q:    Okay.  Tell me the calculation.  Where do you look to come up with the 30 minutes to an hour each week?
>
> A:    Well if you figure about 10 minutes each day, that would be about 30 minutes, wouldn't it?
>
> Q:    Okay so, your sense is it's about 10 minutes each day?
>
> A:    Uh-huh.
>
> Q:    All right.  And that's under oath?

A:      Yes, ma'am.

In contrast to his deposition testimony, Hesseltine states in his unsworn, supplemental initial disclosure that he worked an average of forty-five minutes per week of overtime without compensation.  Hence, considering his alternating three- and four-day work schedule, the average overtime he seeks in connection with person-to-person shift relief is from ten to fifteen minutes per shift.

Day worked on shift A as a shift operator in Goodyear's Isoprene unit.  He states in his supplemental initial disclosure that he worked an average of thirty minutes of uncompensated overtime per week while making person-to-person shift relief.  When asked to explain how much overtime compensation he seeks, Day testified at deposition that "all I'm asking for" is ten to fifteen minutes of overtime per shift.

Parrish currently works on shift D as a production operator in the Budene unit.  He works in several different areas, including the column area, reactor area, stripping area, and finishing building area.  Parrish testified that the time it takes him to make person-to-person shift relief is unpredictable, depending on the job he is working and the events of the day.  He estimated that shift relief could take anywhere from thirty seconds to thirty minutes.  Parrish states, however, in his supplemental initial disclosures that he worked an average of forty-five minutes of overtime every week during the relevant period.

Goodyear argues that the time Plaintiffs spent making person-to-person shift relief is not compensable under the FLSA because it is preliminary or postliminary to their principal activities.  Goodyear maintains that the principal job of the associates is to operate the unit and that "[a]ny pre-shift briefings as to happenings on the shift, which varies according to the personal habits and

14

practices of the person making relief and is not dictated by Goodyear, is in preparation for starting work or leaving work, and does not constitute principal work of the operator." Goodyear further alleges that a portion of the time for which Plaintiffs seek to recover overtime pay was spent socializing with other employees, which does not benefit Goodyear and is not compensable.

In view of the fact that Goodyear mandates person-to-person shift relief on the grounds that it is necessary for the safe and effective operation of the plant, the time spent effecting such relief is arguably compensable work time under the FLSA. Goodyear maintains, however, that even if Plaintiffs' claims are compensable under the FLSA, the time Plaintiffs spent making person-to-person relief is *de minimis* as a matter of law.

Under the FLSA, employees are not entitled to overtime compensation for theoretically compensable work when the time sought is negligible. *See Mt. Clemens Pottery Co.*, 328 U.S. at 684; *Brock v. City of Cincinnati*, 236 F.3d 793, 804 (6th Cir. 2001); *Pressley v. Sanderson Farms, Inc.*, No. Civ. A. H-00-420, 2001 WL 850017, at *3 (S.D. Tex. Apr. 23, 2001). "As a general rule, employees cannot recover for otherwise compensable time if it is *de minimis*." *Lindow v. United States*, 738 F.2d 1057, 1062 (9th Cir. 1984). The *de minimis* doctrine permits an employer, in recording work time, to "disregard 'insubstantial or insignificant periods of time beyond the scheduled working hours, which cannot as a practical administrative matter be precisely recorded for payroll purposes.'" *Mireles v. Frio Foods, Inc.*, 899 F.2d 1407, 1414 (5th Cir. 1990) (quoting 29 C.F.R. § 785.47). Moreover, the Wage and Hour Division of the United States Department of Labor has promulgated federal regulations pertaining to the *de minimis* doctrine, which state:

> [I]nsubstantial or insignificant periods of time beyond the scheduled working hours, which cannot as a practical administrative matter be precisely recorded for payroll

15

> purposes, may be disregarded.  The courts have held such trifles are de minimis.
> This rule applies only where there are uncertain and indefinite periods of time
> involved of a few seconds or minutes duration, and where the failure to count such
> time is justified by industrial realities.  An employer may not arbitrarily fail to
> count as hours worked any part, however small, of the employee's fixed or regular
> working time or practically ascertainable period of time he is regularly required to
> spend on duties assigned to him.

29 C.F.R. § 785.47 (2004); *see Mireles*, 899 F.2d at 1414; *Pilgrim's Pride Corp.*, 147 F. Supp.

2d at 564.  The following four factors are considered in determining whether an activity is *de*

*minimis* as a matter of law:  "(1) the amount of daily time spent on the additional work; (2) the

administrative difficulty in recording the time; (3) the size of the aggregate claim; and (4) the

regularity of work."  *Pilgrim's Pride Corp.*, 147 F. Supp. 2d at 564 (citing *Lindow*, 738 F.2d at

1062-63); *see also Brock*, 236 F.3d at 804.

Goodyear alleges that Plaintiffs' overtime claims of ten to fifteen minutes per shift are *de*

*minimis* and not compensable as a matter of law.  A review of reported decisions reveals that

courts consider daily periods of approximately ten minutes to be *de minimis* as a matter of law.

*See*, *e.g.*, *Lindow*, 738 F.2d at 1062; *E.I. du Pont De Nemours & Co. v. Harrup*, 227 F.2d 133,

135-36 (4th Cir. 1955); *Green v. Planters Nut & Chocolate Co.*, 177 F.2d 187, 188 (4th Cir.

1949); *Pilgrim's Pride Corp.*, 147 F. Supp. 2d at 564; *Pressley*, 2001 WL 850017, at *3.  In

addition to Plaintiffs' testimony, other Goodyear employees confirm that shift relief time is

minimal.  For example, Donald Beeler ("Beeler"), a thirty-seven-year shift employee at the plant,

who serves as a unit coach, stated at his deposition, "I [have] been around a long time.  I know

how long it takes to make relief . . . .  The truth of the matter is, is it may take anywhere from

1 to 2 seconds to 5 to 10 minutes, depending on the situation and that particular job that's being

relieved."  Further, Mayfield's affidavit states that "[t]he time spent at shift change to make relief

is generally very brief.  Even so, the exact time spent making relief would vary with factors unique to each associate, job, and unit . . . shift change for any position on any unit should not require more than 10 minutes."  Similarly, Rob Jordan ("Jordan"), Human Resource Manager at the plant, testified that "[s]hift relief time is typically so short, 30 seconds, a minute or two, five minutes, maybe."

In addition, Jordan testified that recording any alleged overlap in time for shift relief, which takes "from a few seconds to a few minutes," is an administrative burden.  The administrative difficulty lies "in the great variance in shift relief time, the undertaking of following through in reporting and recording this time . . . and the inability to identify the relative proportions of work and leisure involved in shift relief."  Goodyear also points out that a wide variance exists in the amount of time each employee takes to complete person-to-person shift relief.  Finally, Goodyear maintains that the negligible amount of time Plaintiffs spent performing shift relief and the administrative burden of recording such time outweighs the aggregate size of their claims.

Plaintiffs respond by arguing that the amount of additional time expended on this daily activity, ten to fifteen minutes, is not *de minimis*.  Additionally, they claim that recording shift overlap time is not administratively cumbersome to Goodyear because its timekeeping system has the ability to record any time increments in excess of six minutes.  Further, Plaintiffs allege that the aggregate size of their claims is not *de minimis*, given the number of compensable forty-hour work weeks at issue and the total amount of time Plaintiffs seek.  Finally, Plaintiffs note that shift relief was performed on a regular basis—every shift worked at the plant.

17

Effectively, Plaintiffs' claims of ten to fifteen minutes per shift are the equivalent of 1.4% to 2.1% of work time on a twelve-hour shift. Even if time performing shift relief constitutes compensable work time under the FLSA, after weighing the relevant factors, Plaintiffs' claims for ten minutes or less are *de minimis* as a matter of law. *See Lindow*, 738 F.2d at 1064; *Pilgrim's Pride Corp.*, 147 F. Supp. 2d at 564.

> 2.   Early or Late Shift Relief

Many of Goodyear's twelve-hour shift associates, including Plaintiffs, voluntarily participated in a practice of early relief, whereby the employees made private agreements to relieve each other early. Hesseltine seeks overtime compensation for extra time worked when his shift relief arrived late and when his relief attended a mandatory safety meeting. Conversely, Day and Parrish are not seeking compensation in connection with early or late relief. Specifically, Day testified at deposition that his claim is "just strictly shift relief, . . . nobody getting late; it's just the normal shift relief time that overlaps." Likewise, Parrish testified that his claims concern only unpaid wages for the time it takes him to communicate with his relief.

Hesseltine first contends that his relief periodically reported to work late, which forced him to work beyond his twelve-hour shift without being paid overtime. Goodyear argues that any overtime sought in connection with an employee-instituted agreement is not compensable under the FLSA because the arrangement exists solely for the benefit of the employee. *See Blum v. Great Lakes Carbon Corp.*, 418 F.2d 283, 287 (5th Cir. 1969), *cert. denied*, 397 U.S. 1040 (1970) (holding that employees who voluntarily reported thirty minutes early were not entitled to overtime compensation unless they stayed beyond the end of their shift). Additionally, Goodyear

18

maintains that even if this time is compensable, Hesseltine cannot provide the definite and certain evidence necessary to prevail under the FLSA.  *See Harvill*, 311 F. Supp. 2d at 584-85.

Jordan testified that Goodyear's policy is to compensate an employee who works overtime because his shift relief arrives late.  The only requirement is that the employee report the extra time to his Administrative Star Point or coach.  Once the overtime has been reported, Goodyear credits the employee for his extra time and docks the pay of the late-arriving coworker.  Beeler testified that workers do not typically request overtime pay for early or late relief, preferring to deal with any scheduling problems among themselves.  Jeff Elliot, a shift worker at the plant, confirmed that twelve-hour shift employees typically decline to ask their supervisors for extra pay at the expense of a late-arriving coworker.  Furthermore, according to Mayfield, Goodyear does not require, support, or implement the early or late shift-relief practice.  He explained in his affidavit:

> The practice to make early relief is one utilized and supported by the associates collectively.  The explanations associates offer to explain why, collectively they make early relief include, for example, the benefits of daylight in the afternoon after working days rather than getting home after sundown, avoiding Beaumont or I-10 rush hour traffic at 5:00 p.m., the opportunity to coach their sons' or daughters' sports teams or attend their sons' and daughters' special school functions, and "everyone else is doing it."

Indeed, Hesseltine testified that he liked early relief because he enjoyed "getting off early and getting home before dark" and he wanted to be able to go shopping before the stores closed.

Hesseltine also asserts that, on a few occasions throughout the year, he worked uncompensated overtime because his relief was attending a mandatory safety meeting and was unable to relieve him at the pre-arranged time.  Hesseltine admitted, however, that the scheduling

conflict with the meetings occurred only because of the employees' early or late relief practice.

Hesseltine testified at his deposition:

> Q:      So, if you didn't come in before your scheduled shift, if you came in at your regular time, then you would have not been shorted time?
>
> Mr. Josephson:      Objection, form.
>
> Q:      Correct?
>
> A:      Yes.

Upon learning of the problem, Richard Pickette ("Pickette"), a Goodyear personnel manager, informed employees at a meeting that if the self-initiated, early relief agreement created a conflict with Goodyear's safety meetings, then the employees should adhere to Goodyear's published shift schedules. Pickette advised them that they would be compensated for the time worked during meetings but that they must abandon their early relief arrangement and comply with Goodyear's schedule. Under those conditions, Goodyear could schedule meetings without being concerned about employees being late for shift relief. Nevertheless, Hesseltine testified that he liked the early relief arrangement and opted to continue the practice of early or late shift relief, rather than follow Goodyear's stated schedule.

Time expended in connection with early or late shift relief and when attending safety meetings is arguably compensable under the FLSA. Hesseltine admitted, however, at deposition that he could not quantify the amount of time he worked because his relief arrived late or because of a safety meeting. Additionally, he concedes that he did not follow Goodyear's procedure to receive overtime pay, as he did not report his extra time to his Administrative Star Point or coach at the time the alleged overtime accrued. Therefore, Hesseltine has not provided definite and certain evidence that he performed work for which he was not compensated. *See Harvill*, 311 F.

Supp. 2d at 584-85.  Furthermore, Goodyear has adduced summary judgment evidence showing that the employee-instituted early or late relief arrangement was for the benefit of the employees and not Goodyear.  *See Blum*, 418 F.2d at 287.  Accordingly, Hesseltine cannot recover for this time under the FLSA.

### 3.   Credit or Offset Under the FLSA

Assuming *arguendo* that Plaintiffs' claims are compensable under the FLSA and not *de minimis*, Goodyear is entitled to a credit or offset for premium wages it paid Plaintiffs.  Although the FLSA requires overtime wages to be paid for all hours worked in excess of forty, an employer may choose to compensate its employees at a premium or overtime rate for hours worked less than forty per week.  *See* 29 U.S.C. § 207(a)(1); 29 C.F.R. § 778.201(a) (2004); *Singer*, 324 F.3d at 828 (viewing voluntary overtime payments as pre-payments of subsequently due overtime obligations).  When an employer pays its employees at a premium rate, the "employer may offset certain overtime premiums against overtime compensation due under the [FLSA]."  *Id.* at 827. The statute identifies three categories of creditable premium pay:  (1) compensation for excess hours, (2) compensation for weekend and holiday work, and (3) compensation pursuant to a collective bargaining agreement.  *See* 29 U.S.C. § 207(h)(2) (listing pay classifications in § 207(e) (5)-(7)).  Specifically, the FLSA describes the three categories of premium pay that may be offset against accrued overtime:

> (5) extra compensation provided by a premium rate paid for certain hours worked . . . in excess of eight in a day . . . or in excess of the employee's normal working hours or regular working hours . . . ;
>
> (6) extra compensation provided by a premium rate paid for work by the employee on Saturdays, Sundays, holidays, or regular days of rest, or on the sixth or seventh day of the workweek, where such premium rate is not less than one and one-half times the [regular] rate . . . ;

21

> (7) extra compensation provided by a premium rate paid to the employee, in pursuance of an applicable employment contract or collective-bargaining agreement, for work outside of the hours established in good faith by the contract or agreement as the basic, normal, or regular workday . . . .

29 U.S.C. § 207(e) (5)-(7); *Singer*, 324 F.3d at 827; *Howard v. City of Springfield*, 274 F.3d 1141, 1145 (7th Cir. 2001); *Alexander v. United States*, 32 F.3d 1571, 1575 (Fed. Cir. 1994).

If an employer voluntarily pays an employee a premium rate contingent upon his working more than eight hours in one day, then such payment may be excluded from the employee's regular rate and credited toward unpaid overtime. *See* 29 U.S.C. § 207(h)(2); 29 C.F.R. § 778.202(a) (2004) (citing 29 U.S.C. § 207(e)(5)). The rate may qualify as premium pay even if it is less than one and one-half times the employee's regular rate, provided that only the extra compensation beyond the employee's regular rate is credited toward the employer's overtime obligation. *See* 29 U.S.C. § 207(e)(5); 29 C.F.R. § 778.202(c); *see also Singer*, 324 F.3d at 827 n.8. Premium pay for holidays and weekends may also be credited against an employer's incurred overtime obligation, provided that the rate paid for such work is at least one and one half times the regular rate. *See* 29 U.S.C. § 207(e)(6); 29 C.F.R. § 778.203(a) (2004).

Courts have permitted an employer to credit accumulated premium pay against incurred overtime, without regard to when the premiums were paid and when the overtime work occurred. *See Singer*, 324 F.3d at 827 (permitting an employer to offset incurred overtime liability with premium pay from a different pay period in a case not applying § 207(h)); *Kohlheim v. Glynn County*, 915 F.2d 1473, 1481 (11th Cir. 1990) (holding that employer was allowed to offset accrued overtime with all previously paid premiums regardless of the workweek); *Abbey v. City of Jackson*, 883 F. Supp. 181, 187 (E.D. Mich. 1995) (stating that employees would receive a windfall if employer offsets were limited to the period in which the premium pay occurred). Other

22

courts have adopted a "workweek restriction," which allows an employer to offset overtime liability for a particular workweek only with premium compensation from the same workweek. *See Herman v. Fabri-Centers of Am., Inc.*, 308 F.3d 580, 590 (6th Cir. 2002), *cert. denied*, 537 U.S. 1245 (2003) (finding that the legislative history, administrative regulations, and applicable case law support imposition of the workweek restriction); *Howard*, 274 F.3d at 1148 (asserting that limiting employer offsets under the workweek restriction was necessary to accomplish the purpose of the FLSA).

Goodyear alleges that it is entitled to a credit or offset for any alleged overtime owed because it paid Plaintiffs a premium rate for hours worked in excess of eight per shift. Indeed, Plaintiffs do not dispute that Goodyear pays its employees at a premium rate which exceeds the requirements of the FLSA. The record reflects that Goodyear pays its twelve-hour shift employees an overtime rate of one and one-half times their regular rate for all hours worked over eight per shift. Jordan testified that Goodyear pays its employees a premium rate of 1.71 times their regular rate for additional unscheduled overtime, a rate that exceeds the requirements of the FLSA. The FLSA requires employers to pay overtime compensation only when employees work more than forty hours in one week. *See* 29 U.S.C. § 207(a)(1); *see also Cleveland v. City of Elmendorf*, 388 F.3d 522, 526 (5th Cir. 2004). In this situation, on weeks in which Plaintiffs worked three twelve-hour shifts, a total of thirty-six hours in a week, they received twenty-four hours of pay at the regular rate and twelve hours of premium pay at the overtime rate. Likewise, when Plaintiffs worked four twelve-hour shifts, a total of forty-eight hours in one week, they received thirty-two hours of pay at the regular rate and sixteen hours at the premium overtime rate.

Hence, Goodyear paid Plaintiffs a premium pay rate when it was not required to do so. Therefore, Goodyear may credit the premiums paid Plaintiffs against any additional overtime obligations incurred.  When calculating its available credit, Goodyear must subtract the regular rate it paid its employees from the premium rate in order to determine the amount of excess premium pay.  *See* 29 C.F.R. § 778.202(c).  Goodyear pays a premium rate equal to one and one-half times the employees' regular rate, permitting it to use the half-time premium as a credit.  The amount of the credit accumulated by Goodyear varies depending on the workweek.  Specifically, on thirty-six hour weeks, where Goodyear paid twelve hours of non-required premium pay, the company is entitled to a credit equal to four hours of overtime.  For forty-eight hour weeks, Goodyear paid eight hours of non-required overtime, giving it a credit equal to two hours and forty minutes of overtime.

Plaintiffs assert an average of ten to fifteen minutes of unpaid work per shift, totaling no more than one hour of unpaid overtime per week.  Specifically, both Hesseltine and Day claim an average of ten to fifteen minutes of unpaid time per day.  Parrish's claims vary depending on the job he was working, but they average no more than fifteen minutes per day.  Because Plaintiffs assert an average of no more than one hour of unpaid work per week, there is no week in which Plaintiffs' claims exceed the credits accrued by Goodyear.  Hence, to the extent they are not *de minimis*, Plaintiffs' claims for overtime compensation under the FLSA are offset in their entirety by prior premium payments made by Goodyear.  Furthermore, in light of the credits and offsets to which Goodyear is entitled for premium pay for hours worked in excess of eight per shift, the court need not decide whether Goodyear is also entitled to credits for premium pay for hours worked on unscheduled shifts, holidays, the seventh work day, paid mealtimes, and paid breaks.

24

Plaintiffs argue, however, that because Goodyear has never sought a credit or offset from its employees in the past, the doctrines of waiver, estoppel, and laches prevent it from seeking a credit or an offset in this lawsuit.

a.     Waiver

"Waiver is an intentional relinquishment or abandonment of a known right or privilege." *Long v. Gonzales*, ___ F.3d ___, ___, No. Civ. 04-60399, 2005 WL 1870777, at *3 (5th Cir. Aug. 9, 2005) (citing *Kontrick v. Ryan*, 540 U.S. 443, 458 n.13 (2004)); *accord Monumental Life Ins. Co. v. Hayes-Jenkins*, 403 F.3d 304, 313 (5th Cir. 2005); *Kona Tech. Corp. v. Southern Pac. Transp. Co.*, 225 F.3d 595, 608 (5th Cir. 2000); *United States v. Reveles*, 190 F.3d 678, 683 (5th Cir. 1999).   "[A] waiver must not only be voluntary but constitute a knowing and intelligent relinquishment or abandonment of a known right or privilege." *Richardson v. Lucas*, 741 F.2d 753, 756 (5th Cir. 1984) (citing *Estelle v. Smith*, 451 U.S. 454, 471 n.16 (1981)).   Under Texas law, the elements of waiver are:   "'(1) an existing right, benefit, or advantage, (2) knowledge, actual or constructive, of its existence, and (3) actual intent to relinquish the right, which can be inferred from conduct.'"   *Monumental Life Ins. Co.*, 403 F.3d at 313 (quoting *First Interstate Bank v. Interfund Corp.*, 924 F.2d 588, 595 (5th Cir. 1991) (citing *Missouri-Kansas-Texas R.R. Co. v. Heritage Cablevision of Dallas, Inc.*, 783 S.W.2d 273, 280 (Tex. App.—Dallas 1989, no writ))); *see also ASI Techs., Inc. v. Johnson Equip. Co.*, 75 S.W.3d 545, 548 (Tex. App.—San Antonio 2002, pet. denied).   "Generally, waiver is a fact question of intent." *Kona Tech. Corp.*, 225 F.3d at 608.   Nonetheless, "'when the facts and circumstances are admitted or clearly established, the question becomes one of law.'"   *Monumental Life Ins. Co.*, 403 F.3d at 313

25

(quoting *Motor Vehicle Bd. of Tex. Dep't. of Transp. v. El Paso Ind. Auto. Dealers Ass'n, Inc.*, 1 S.W.3d 108, 111 (Tex. 1999)).

Here, Plaintiffs contend that Goodyear's prior history of paying overtime resulting from shift relief when brought to the attention of the company, but not seeking a credit or offset, demonstrates an intent to relinquish its right to use credits or offsets under the FLSA in this lawsuit.  Goodyear responds that common law waiver is inapplicable to a statutory credit or offset under the FLSA.  Alternatively, Goodyear claims that its policy of not seeking a credit or offset when employees properly and contemporaneously report overtime in accordance with its policies does not constitute an intentional waiver.  Further, Goodyear points to its answer to Plaintiffs' second amended complaint, in which Goodyear states that it "asserts its right to an accounting and an offset of claimed unpaid overtime wages as to each Plaintiff by crediting overtime and premium payments in excess of the minimum requirements of the FLSA made to each Plaintiff."  Moreover, both parties confirmed in a stipulation filed with the court that Goodyear retains the right to assert defenses such as "an accounting, credit or offset."

Hence, Plaintiffs' waiver argument is unavailing.  There is no evidence that Goodyear intended to relinquish its right to a credit under the FLSA.  *See Kontrick*, 540 U.S. at 458 n.13; *Monumental Life Ins. Co.*, 403 F.3d at 313.  An employer's decision to treat its employees more favorably than the law requires does not mean that the employer forgoes the protections of that law in other circumstances.

b.    Estoppel/Laches

"'[E]stoppel involves the reasonable reliance of one party on the conduct or statements of another party.  If the relying party suffers harm as a result of its reliance, the law estops the other party from disavowing its earlier conduct or statements.'"  *Florida Dep't of Ins. v. Chase Bank of Tex.*, 274 F.3d 924, 933 (5th Cir. 2001), *cert. denied*, 535 U.S. 1097 (2002) (quoting *Matador Petroleum Corp. v. St. Paul Surplus Lines Ins. Co.*, 174 F.3d 653, 660 (5th Cir. 1999)).  "The Fifth Circuit defines estoppel as 'any conduct, express or implied, which reasonably misleads another to his prejudice so that a repudiation of such conduct would be unjust in the eyes of the law.  It is grounded not on subjective intent but rather on the objective impression created by the actor's conduct.'"  *United States ex rel. United Rentals, Inc. v. Hartford Fire Ins. Co.*, 339 F. Supp. 2d 799, 803 (W.D. Tex. 2004) (quoting *Morgan v. Thomas*, 448 F.2d 1356, 1365 (5th Cir. 1971)).

The defense of laches has three elements:  "'"(1) a delay in asserting the right or claim; (2) that the delay was not excusable; and (3) that there was undue prejudice to the defendant."'"  *Johnson v. Crown Enters., Inc.*, 398 F.3d 339, 344 (5th Cir. 2005) (quoting *Goodman v. Lee*, 78 F.3d 1007, 1014 (5th Cir. 1996) (quoting *Geyen v. Marsh*, 775 F.2d 1303, 1310 (5th Cir. 1985))).  The doctrine of laches entails a "party's unreasonable delay in asserting legal or equitable rights and another's detrimental good-faith change in position because of the delay."  *Sauceda v. Kerlin*, 164 S.W.3d 892, 914 (Tex. App.—Corpus Christi 2005, no pet.) (citing *Wayne v. A.V.A. Vending, Inc.*, 52 S.W.3d 412, 415 (Tex. App.—Corpus Christi 2001, pet. denied)); *see also Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 205 (5th Cir. 1998).  Laches is an equitable doctrine that is "generally not available in a suit to enforce a statutory right because, in such a

case, the statute of limitations is the appropriate defense." *Houston Lighting & Power Co. v. City of Houston*, 101 S.W.3d 633, 638 (Tex. App.—Houston [1st Dist.] 2003, pet. denied); *see also Rogers v. City of San Antonio*, 392 F.3d 758, 773 (5th Cir. 2004), *cert. denied*, 125 S. Ct. 2945 (2005).

Plaintiffs argue that Goodyear is estopped from seeking a credit or offset in this lawsuit because it benefitted from the performance of shift relief and a credit or offset would produce a "highly unconscionable result." Alternatively, Plaintiffs contend that the doctrine of laches should apply because of Goodyear's delay in invoking a credit or offset. Plaintiffs, however, have adduced no evidence of detrimental reliance, an element of both estoppel and laches. *See Florida Dep't of Ins.*, 274 F.3d at 933; *Sauceda*, 164 S.W.3d at 914. Indeed, it was Plaintiffs who waited years to seek additional overtime compensation and chose to forego the opportunity to report the purported extra work when it was performed, precluding any contemporaneous investigation of the alleged overtime and presenting no occasion for the earlier invocation of a credit or offset on the part of Goodyear. Therefore, in this situation, Plaintiffs' waiver, estoppel, and laches arguments are without merit. Moreover, due to the extent of Goodyear's credits and offsets, the court need not address Plaintiffs' remaining arguments.

III.   Conclusion

Accordingly, Goodyear's Motion for Summary Judgment is granted. Plaintiffs Hesseltine, Day, and Parrish have failed to present a claim that warrants relief. There remain no material facts in dispute, and Goodyear is entitled to judgment as a matter of law on Plaintiffs' claims for overtime compensation under the FLSA.

SIGNED at Beaumont, Texas, this 22nd day of August, 2005.

_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE